Good morning. May it please the Court, I would like to reserve five minutes for my rebuttal. Okay, please watch the clock. I'm sorry. That's a yawn. Okay, thank you. The District Court abused its discretion when it denied the leave to amend my client's causes of action for unfair business practices, amongst other things, because my clients have shown standing. And standing for the purposes of unfair business practices post-Proposition 64 in California is clarified by California Supreme Court in Kwikset case. It can be shown by numerous ways. And the amended complaint, first amended complaint, clearly stated at least several ways that my clients have suffered economic harm as a result of unlicensed medicine scheme perpetrated by Luana Murphy. Let me ask you a question about the procedural history here. Because didn't your clients move to remand the state law claims? And the district judge didn't grant that. The district judge actually ended up ruling, I think it was either on a motion to dismiss or a motion for judgment on the pleadings. Is that what happened? No, Your Honor. She did grant the request to remand. We did dismiss last remaining federal claim under Rehab Act, and the case was remanded. So the court declined to exercise jurisdiction on a state claim. But unfair business practices and the claim under Disabled Person Act was dismissed prior to the second round of motions to dismiss and request, and the court's declining to exercise jurisdiction. Okay, I see. Yes. I see. So what's preventing you then from taking that issue back up again in California State Court? That's exactly what I'm trying to tell. But, of course, my opponent, who are three of them here, saying that there is a collateral estoppel and a court's ruling prevents us from going back and re-alleging same claims. I did attempt that. Obviously, we met and confer, and their position is that I can't. But I do agree 100% with Your Honor that the fact is this is an interim ruling, and upon declination of jurisdiction by the federal court, we can re-allege the same claim. The other side is arguing, well, it dismissed with prejudice. Therefore, it's collateral estoppel. So it opens up another appeal. I'm not sure, though, Counsel, why you don't want to take this battle up in state court. So what is it that you want us to do here? Send it back on the UCL claim because of the allegation of injunctive relief? That's one of the arguments raised in the brief. Correct. And it's an allegation that we did. But I'm looking at the complaint, and other than a passing reverence to injunctive relief, you don't allege a request for injunctive relief, setting aside a problem with standing, which I think is a pretty serious problem. But you don't allege a claim for injunctive relief in the prayer for relief. That was not the thrust of the complaint at all. And to send it back on that, I'm just not sure what you're hoping to accomplish with that. I am hoping to accomplish a reversal on the ground that it was abuse of discretion not to allow even one amendment. And I can point, Your Honor, where we have at least claim for restitutionary relief because the paragraph, and I can tell you it's on page 15, where my clients describe the practice of ‑‑ it's on page 15, paragraph 60 to 63, titled, Exodus's Predicate Practice of Withholding Patients' Records, which is contrary to the state and federal law that one medical facility cannot do that. But the district court didn't see any grounds for restitution. It said it was for the death of the son, and there was nothing there. It was just damages. What is restitutionary? So what did the illegal practices, what money did they take from your client? So one example of illegal practice which caused economic harm is that, and I described in length in my complaint, that it's a pattern and practice of this facility entity as whole. What they do, they withhold medical records, forcing a patient's family to go file a lawsuit in order to get that, to incur attorney fees, to incur court fees, process serving fees. So this is on its own. It's a concrete injury that my client suffered as a result of this fraudulent, well, predicate scheme or unfair scheme. The scheme is basically centers around Luana. So would the injunction be to provide the medical records? The injunction is prohibiting them denying deceased patients or patients' families who have right to obtain medical records because their son is deceased. I have one more question. I know you want to save some time, but we asked you also to brief Article III standing because the complaint didn't allege there's a threat of the same injury in the future to your clients. What's your position on that? My position, I understand the court's position that my client's son is deceased, but the entity operates and continues operation. We're a small boutique firm. This is the second case we have with them where they're doing the same thing, withholding medical records, forcing the lawsuit just to obtain the records. One patient ended up committing suicide, hanging himself right in the facility. Second one was discharged. All it is is this individual who's not even a physician has this lucrative contract. You're not alleging that your client has Article III standing. You're saying that if there was a class action, there might be Article III standing. Under private attorney general, yes. We would have Article III standing because they still continue their practice as of today, and obviously one thing that the court couldn't join, state court couldn't join, is by issuing injunction. And I believe that the fact that we have at least made a colorable showing through the pleadings, I understand that explicitly, Your Honor, within state we want injunctive relief to this, this, this, but we did state particularized elements of harm such as forced to file a lawsuit, incur attorney fees to obtain the records, or funeral expenses. Those are what type of harm if a district court had a problem with that, surely we were entitled to have leave to amend. And eventually we wanted out of that jurisdiction, but at least we would not run into now long-running problem of state court taking a position, which is its easy way out, they do that frequently, that it's a collateral estoppel. But I agree, it's an interim ruling, it should have been a collateral estoppel, and we should have had the right to reallege the same claims in a state court upon courts declining to exercise jurisdiction. It's time for rebuttal.  We'll hear from the other side. Good morning. May it please the Court, my name is Raymond Wilson, and I represent Exodus Recovery, Exodus Foundation, and Luana Murphy, along with my co-defendants, counsel. We're here to argue today. I would like to take seven minutes of our ten. My co-counsel, David Pruitt, will take the final three. I think that the Court was right in focusing on the lack of Article III standing. I think that the District Court did a very good job of walking through California law on the Unfair Competition Act, and in determining that there was no injury in fact under California law, then finding because there's no injury in fact. The lack of Article III standing was not the basis of the District Court's dismissal. Do we decide that in the first instance, or do we send it back for the District Court to reach that question? I think that you can decide that on the first instance. When looking at a dismissal, the Court looks at that de novo and can look into the law as it's presented on the record and determine that it should not be sent back. Assuming we think the complaint did request injunctive relief, I think certainly a couple of paragraphs on that, even if it's not in the prayer for relief, why would the Court not have Article III standing for that? That seems to be enough for UCL standing. I think that if the Court looks at the record, it's quite clear that there is not standing for injunctive relief in this case. As the United States Supreme Court recently decided in the Murphy case, there must be particularized risk of injury to each plaintiff in the matter, in a looking forward or a going forward basis for injunctive relief. Neither living plaintiff in this case has shown in the original First Amendment or Second Amendment complaint at the District Court that they suffered or expect to suffer any injury going forward in this matter that would entitle them to injunctive relief. Insofar as the decedent is concerned, looking forward, there is no risk of continuing ongoing harm of the same nature because he is deceased, much as the District Court decided in the ADA claim. And then particularly here with these plaintiffs, they don't have any further exposure to your client going forward? That is correct. The two surviving plaintiffs are not deaf, they're not mentally disturbed, so they're not going to be seeking the care of a mental crisis center, let alone our mental crisis center, Exodus. Now, can you address opposing counsel's statement that it's your client's position that if this were to go down to California State Court, that defendants would assert a collateral estoppel argument on the UCL claim? Yes, and I think this goes to the first part of the appellant's briefing to Your Honors, and that is that it's not an interim order. The order that the District Court found when ruling on our 12B6 motion for the first amendment complaint, they had proper jurisdiction for two federal questions and then supplemental jurisdiction over the state law claims. But because the District Court allowed amendment of the complaint, the initial ruling at least on the DPA and UCL claims were interim or interlocutory. That is correct, and the Plaintiffs' Counsel did amend and filed a second amended complaint. They thereafter asked the court to not take up supplemental jurisdiction when they chose not to amend the sole remaining federal claim under the Rehabilitation Act. And so then the UCL and DPA claim merged into the final dismissal? That is our position, correct. Okay, and so then it would be that the dismissal would be binding on the state court? That is correct. It is our position that upon the dismissal following the second amended complaint and our second 12B6 motion that the two orders merged. Well, and even in state court, my understanding is that the California Supreme Court imputes Article III standing principles to UCL. Is that not correct? That is correct. In all of the jurisprudence looking at the UCL, Article III standing is very important. The California Supreme Court has laid out a way of thinking about the UCL in that the causes or actions that may constitute an unfair practice is quite broad, but the remedies are very, very narrow. Really it is only restitution, the return of ill-gotten gains, or injunctive relief. And I believe that we have briefed and have argued in our papers that plaintiffs in this case have neither standing for restitutionary damages or standing for injunctive relief. The opposing counsel argued that return of medical records, or the expenses that incurred due to withholding of medical records, was a form of restitutionary relief. Can you address that? Yes. The California Supreme Court has indicated, and I believe it is in the Korea Supply case, but I do not know that for certain, that once you have filed a lawsuit to enforce any of your damages, that that is not restitutionary and that is not recoverable under the UCL. As I am coming up on my time, I do not want to eat into my co-counsel's time. Thank you very much, Your Honors. Good morning, Honorable Judges. David Pruitt on behalf of Defendant Dr. William Wershing. I just want to recount the procedural history, since Judge Liberti asked about it in particular. And the way it happened is that there was a motion dismissed that was granted, and then when plaintiff amended, despite asking for the opportunity to amend the Rehabilitation Act, the only thing that they asked to amend, they did not address the 17200 claim at oral argument at all. Only after they had the opportunity to amend, they didn't reassert any federal claim, and then they moved, the plaintiff, they being, to ask the court to decline supplemental jurisdiction. The district court did so, enter judgment accordingly, and therefore, as a result of that sequence of events, the 17200 claim was necessarily decided. It was an interim ruling which became a final determination when there was a final determination made by the district court. And although it was a state law claim at the time, the district court clearly had jurisdiction because it was supplemental jurisdiction at that time, and the court had the authority to make a determination relative to that claim. There have been some things said about injunctive relief in medical records. I think that those are new theories. I don't think that they were addressed below. I know they weren't addressed below, and I don't recall them being addressed in the briefing, but I will point out that under California law, the California Medical Information Act, Civil Code 56, provides for a process by which someone gets medical records. That includes paying for them. So this idea that you have to pay to get medical records is not a form of injury that would fill a void in this particular case. In addition, and again, I don't believe that the plaintiff actually addressed these issues, so I'm going to respond to them in kind. The California Court of Appeal, in a very well-respected decision, Carter v. Paradise Valley Hospital, decided that when a plaintiff claims a post-injury failure to provide records or failing to document records, that's not an injury. It's not an injury in any sense because when someone goes to hear a medical provider and they seek medical services, after they have ceased receiving those medical services, the things that occur after that are not damaging from the services. So I want to make that point. Another thing that the plaintiff has sort of thrown in here over and over again that we addressed below and is in the motion for judgment on the pleadings on behalf of Dr. Wershing is Pegram v. Herdrich. The United States Supreme Court decided that when there's an issue of whether there's financial incentives involved, the check on that is the standard of care. It is what is the medical standard of care, what does a physician have to do to be in compliance with the obligation to use reasonable judgment in the provision of care? And that's at Pegram 530 U.S. 211 at 218 to 219. Your time is used up, so please wrap up. All right. Thank you. I appreciate the opportunity. All right. Thank you. You have a couple of minutes for rebuttal. Thank you. First, the statement of law. And counsel just said that California UCL law restricts the relief only standing only to claims for valid restitutionary relief. That's not true. Absolutely wrong. And this is post Prop 64. California Supreme Court ruled that standing for purposes UCL and false advertising law is not dependent on whether plaintiff can state a valid claim for restitutionary relief. Clayworth v. Pfizer in 2010, California Supreme Court ruled. Kwikset Corporation v. Superior Court, that's a California Supreme Court ruling, specifically said, we hold ineligibility for restitution is not a basis for denying standing under Section 172.04 and disapprove those cases that have concluded otherwise. So that's a first misstatement of law. Well, what's the flip side of that? If restitution isn't a necessary prerequisite, what is? It's injunctive relief, right? It's all kind of harm. And they described, for example, how plaintiff can show the economic injury. That gets us to the Article 3 standing. Okay. So if the only thing left is injunctive relief, how do you show Article 3 standing for that? We have. And so there are two aspects of this case. If plaintiffs were not able to show Article 3 standing, that the court had to void its order, or at least we had to be allowed to go back to the state court because the standards are different. We don't need Article 3 standing in a state court. In a state court, that's the quote you're reading from the California Supreme Court, adopted Article 3 standing principles for standing under the UCL. Not exactly. It basically states here, the California Supreme Court states that there are innumerable ways in which economic injury from unfair competition may be shown. Plaintiff may surrender transaction, acquire transaction less, have a present or future property interest diminished, deprived of money or property to which he has cognizable interest. And there are so many ways. It's very broad because it has really the policy is remedial. I think we have your argument. You're over time now. And one more minute. Please wrap up. Yes. One more minute. No, you don't have one more minute. Okay. Please wrap up. I will. Paragraph 62 states that contrary to in a violation of Evidence Code 1158, the records were withheld. It's one thing to pay for records. It's another thing to have to pay for a lawyer to file a lawsuit to enforce California Evidence Code 1158. And that's exactly what defendants forced my clients to do. Thank you.  Thank you. The case of Wright v. Exodus Recovery Incorporated is submitted.
judges: IKUTA, NGUYEN, Liburdi